# U. S. DISTRICT COURT.

## In the matter of DAVID KEMPNER, a bankrupt.

A city marshal who levies an execution issued upon a judgment of a state court upon the property of the bankrupt, which levy is set aside as void by the bankrupt court as in violation of the bankruptcy act, has no lien upon the property levied upon, or the proceeds thereof, for the fees, poundage, &c., of such levy, and pay-ment· thereof, out of the fund in the hands of the assignee, denied.

*It seems*, that a judgment obtained before the filing of the bankrupt's petition, but with knowledge on the part of the judgment creditors that the debtor is insolvent,. will be treated in bankruptcy as void under the act..

*It seems*, that a judgment creditor who has proved his claim (the judgment) in the bankruptcy proceedings so submits it to the jurisdiction of that court, that the judgment stands as a simple contract claim stripped of all the verity with which the judgment of the state court has clothed it.

*Southern District of New York, in Bankruptcy.*

A city marshal, who had levied an execution upon the property of the bankrupt five days before the filing of his petition, and held the same until ousted by the U. S.. marshal under the warrant of the court in bankruptcy,. petitions the court in bankruptcy to be paid the fees of such levy out of the bankrupt's estate in the hands of the assignee.

The petition being referred to the register in charge, he certifies thereon as follows :

I, the undersigned, register in charge of the above entitled matter, do hereby certify and report that, I have been at-tended by counsel for the petitioner, Samuel Schiele, in the annexed order referred to, and also by counsel for the assignee in this matter, and have taken the testimony of the respective parties which is hereto annexed, and have listened to their respective allegations and arguments, and I find that the judgment of Elias M. Sperling against the said bankrupt

In the Matter of Kempner.

in said petition referred to, was rendered by default in the marine court of the city of New York, on the 20th day of March, 1871, for the sum of $1,000 damages and $10 costs, and that execution was on the same day issued to the said petitioner, who was then a city marshal of said city of New York, having full power under laws of the state of New York, to execute the same. That the said petitioner duly, and upon the 20th day of March, 1871, levied said execution upon the goods of the said bankrupt consisting of a stock of boots and shoes, then in the store of said bankrupt in College Place, in said city of New York. That said goods were in the sales-room on the third floor of the building, over which the said bankrupt resided with his family. That said room was the whole size of the store, to wit, forty-three feet by twenty-three feet, out of which was partitioned off a stairway leading to said floor above, where the family of said bankrupt resided. That the door to said room was duly secured by a lock which appears to have theretofore been regarded as a sufficient protection and security of said store of goods. That the said city marshal at the time of making said levy, placed two men in charge to watch said goods day and night, and kept them till the 4th day of April, 1871, on which day he proceeded, pursuant to notices in due form of law, to sell said goods at auction, but was, before the completion, of said sale staid by an injunction of this court in bankruptcy, and the United States marshal took possession of said goods under the warrant of this court in these proceedings, and placed one man in charge to watch and guard said goods.

That after the said 4th day of April, 1871, the same city marshal withdrew one of his said keepers, but continued one of them day and night till the 13th day of April, aforesaid, when said goods were surrendered to said U. S. marshal by the said city marshal, under an order of this court.

That on the 22d day of April, 1871, one of the judges of

the said marine court, taxed the said costs, fees and disbursements of said petitioner at the sum of $546 09-100, which sum the said petitioner claims as adjudicated to him by the said marine court.    But in case this court should not deem such taxation binding upon it, and should look into the bill, said petitioner claims the sum of $29 94 as levy and poundage fee; $66 75, auctioneer's fees and disbursements; $180 00, for the services of his said two keepers; and the further sum of $30 for his own fee for the custody of said property during the period aforesaid; amounting in all to the sum $306 09.

In reference to the taxation by the judge of the marine court, I think that, as it does not appear that such taxation was pursuant to notice, either to the bankrupt, his assignee, or any other person, this court is not bound to regard it as in any sense a judicial act.    Again, the sum taxed ($546 09) upon an execution for $1,010, is calculated to provoke inquiry, and upon an examination of the law touching the fees of such officers, I feel that such a taxation might well meet with something more than an emphatic rejection.

As I understand the statute, the only sums that the city marshal could legally claim in any view of the case, would be, $39 95, levy and poundage fee; $66 75, auctioneer's fees and disbursements; and such sum as would be reasonable for the custodianship of the goods.    No doubt, one man was sufficient, and I do not really think, that even that was necessary.    The goods being few in number, and of a character that they could easily and without damage be packed into boxes and stowed away.    And again, I think $3 for a day and a night quite sufficient for a custodian, as he had only to sleep at night in the store when he could easily plan a bed and make himself as comfortable as he could be made elsewhere.

At $3 a day and night, the sum disbursed would amount to but $45, making in all the sum of $141 70-100.    But under the facts of this case, I don't see how it is possible

that the petitioner should be entitled to anything whatever.

The petition against the bankrupt was filed the 25th of March, 1871. The judgment was recovered on the 20th March, only five days before. It is clear from the evidence, that the bankrupt was insolvent at the time, and that the judgment creditor had good reason to believe so. It cannot, I think, be doubted that had the judgment creditior bought in the goods in question upon the intended sale, the value of the goods might have been recovered back from him in an action by the assignee under the provisions of the act, on the ground that the judgment and proceedings under it gave the creditor a preference which rendered the judgment and all proceedings under it void. It is not easy to see how the city marshal could get a lien upon the goods under the levy of an execution issued upon a judgment so rendered void. If he got no lien, he has no ground here upon which he can base a claim against the proceeds of the sale of these goods; for it will not be claimed that there is any privity of contract between him and the bankrupt or the assignee.

It is, however, argued by the counsel for the petitioner, that notwithstanding the view above taken, the petitioner has, under the ruling of this court in the case of *Honseberger*, (2 *B. R.*, 33), a lien on the property levied upon, for his fees. I don't so understand the doctrine of that case. There the attachment was legally issued, and good till set aside. Here the judgment and every step taken under it is void, as fraud upon the act.

The case of *Stubbs*, (4 *B. R.*, 124) seems to me to be in point.

It was strenously argued by the counsel for the petitioner, that it was not within the power of this court to declare the judgment of another court of competent jurisdiction void.

Of the correctness of the general principle here asserted, no doubt may be entertained. But to assert, that this court has not the power to treat a preference, even though in the form of a judgment obtained in violation of the provisions

In the Matter of Kempner.

of the bankruptcy act, so far as the refusal to permit it, or any lien claimed under and in virtue of it, to be created under it, to be paid out of the proceeds of the bankruptcy estate, is to strike at the very foundation of the act. With the judgment so far as the court in which it was obtained is concerned, this court neither interferes, nor claims the right to interfere.

But the question, what rights shall the judgment creditor have under it, in the court of bankruptcy, is a question entirely for the bankruptcy court.

It appears also, that the judgment was proved by the judgment creditor in bankruptcy. This, under the provisions of the 21st section, is a voluntary surrender of his judgment to the jurisdiction of this court, who may thereupon treat it as a simple contract claim, stripped of all the verity with which the court in which it was recovered has clothed it. After that, it would be almost absurd to question the power of the bankruptcy court over it. Had the creditor refused to prove his judgment in bankruptcy, of course, bankruptcy would have had no effect upon it, or jurisdiction over it—save to discharge it.

The power of the bankruptcy court to discharge the judgment is not questioned. It is only its power to do a lesser thing—its power to refuse to recognize and pay an asserted lien of an officer charged with the duty of executing such judgment for his fees for so doing.

It seems to me, that so far as this court is concerned, the lien here claimed must show the facts of the judgment under which it is claimed to have been created. And as to that judgment, it having been obtained by a violation of the bankruptcy act the bankruptcy court will not recognize or pay it from the fund in the hands of the assignee.

I, therefore, recommend that an order be entered denying the said petition, with costs. Respectfully submitted, I. T. WILLIAMS, register.

The conclusions of the register having been acquiesced in by the petitioner, no opinion from the judge was required.